UNITED STATES BANKRUPTCY COURT
DISTRICT OF NORTH DAKOTA

In re:                                                          Bankruptcy No. 10-31028
                                                                Chapter 7
Dennis J. Charles,

              Debtor.
_____/

**MEMORANDUM AND ORDER**

Before the Court is Trustee Kip M. Kaler's Objection to Claim of Amended Exemptions filed on October 4, 2012. Upon review of the evidence and arguments offered at the hearing on the objection, the Court finds in favor of the Trustee and sustains his objection.

**I. Facts**

Debtor Dennis J. Charles filed a voluntary Chapter 7 bankruptcy petition on August 17, 2010. On Schedule A, Debtor listed the current value of his house at $225,000 and the amount of secured debt encumbering the house at $258,000. On Schedule C, Debtor claimed an exemption in his house under N.D.C.C. § 28-22-03. He listed the value of the claimed exemption as $1.00 and the current value of the property without deducting the exemption as $225,000.

On February 10, 2011, the Trustee brought an adversary proceeding (11-7008) against Debtor seeking a denial of his bankruptcy discharge under 11 U.S.C. § 727(a)(2) and (4). The Trustee alleged that Debtor made multiple false oaths in his bankruptcy schedules including listing the value of his house at $225,000. The Trustee further alleged Debtor concealed assets of the estate, including his house, by minimizing their value with

an intent to defraud. Debtor denied the allegations in the Trustee's Complaint, and the Court held a trial.

At the trial, the Trustee offered the testimony of real estate appraiser, Eric Grande, who had prepared an appraisal of the house in conjunction with a refinancing transaction in May 2008. Grande estimated that Debtor's house had a market value at that time of $280,000. Grande completed a retrospective analysis for the adversary case and concluded that the market value of Debtor's house was $265,000 on August 17, 2010, the date of Debtor's bankruptcy petition.

In April 2009, Debtor completed a financial statement for a bank and certified that the value of his house was $280,000.

Debtor tried to sell his house in 2009 and listed it with a realtor for several months. The original list price was $279,900, and the final list price was $274,900. Debtor received one written offer for $249,900 in November 2009. He rejected it and counteroffered with $274,900. Debtor claimed he received a second offer which was conveyed to him by his realtor over the telephone. According to Debtor, the offer was so low that he told his realtor not to bother with a counteroffer. The Trustee testified that Debtor told him he had received an oral offer on the house for $225,000.

Debtor did not offer an appraisal or the opinion of a professional appraiser to rebut Grande's testimony. He offered evidence that the tax assessed value of the house was $225,000 in 2009 and $236,000 in 2010, but he did not rely on the tax assessment when completing Schedule A. Rather, he claimed that the $225,000 value he listed was based on the oral offer to buy the house for that sum. He admitted on cross examination, however, that he thought his house was worth more than $225,000.

2

By Memorandum and Order filed February 14, 2012, the Court found that the best evidence of the value of Debtor's house was the retroactive appraisal, in which Grande valued the house at $265,000, and the written offer of $249,900 received by Debtor in November 2009.  Therefore, the Court determined that the value of Debtor's house on the date of petition was between $249,900 and $265,000.  The Court was not convinced that the $225,000 offer – which was $22,000 less than the November offer and $55,000 less than the 2008 appraisal and initial offering price – provided a basis for a good faith value estimate.  In reaching this conclusion, the Court considered: (1) the figure Debtor elected to record on Schedule A was significantly smaller than the other more credible options available to him; (2) Debtor rejected the $225,000 offer and declined to counteroffer because it was too low; and (3) Debtor admitted that $225,000 did not reflect his opinion of the value of the house.  Accordingly, the Court found that the $225,000 value Debtor entered on Schedule A was false and that Debtor entered it with reckless disregard for the truth.

Additionally, the Court found that Debtor overstated the amount of debt against the house.  Debtor listed the first mortgage as $224,000, but the actual sum due and owing on the date of petition was $216,963.96.  Debtor listed the amount of the second mortgage as $34,000, but a bank statement indicated the outstanding balance shortly after the date of filing was $31,399.46.

The Court concluded that Debtor made multiple false oaths in connection with his case and concealed the true value of his house.[1]  The Court denied Debtor a bankruptcy

---

[1] The Court considered other facts not directly relevant here in its decision to deny Debtor a discharge.

3

discharge under section 727(a)(2) and (4). The Bankruptcy Appellate Panel for the Eighth Circuit affirmed the Court's decision on July 16, 2012.

Debtor filed various amendments to his claimed exemptions in 2010 and 2011, but none of them related to the $1.00 exemption he claimed in his house. On September 28, 2012, however, Debtor filed an Amended Schedule C, increasing the value of the claimed exemption in his house from $1.00 to "up to $100,000 in equity."[2] Debtor did not amend the value of the house.

## II. Conclusions of Law

Section 541(a)(1) of the Bankruptcy Code provides that, at the commencement of a case, the bankruptcy estate is comprised of "all legal or equitable interests of the debtor in property." 11 U.S.C. § 541(a)(1). The Code allows debtors to exempt certain property from the bankruptcy estate and retain it for the purpose of making a fresh start after the bankruptcy is concluded. See 11 U.S.C. § 522(b)(1); Benn v. Cole (In re Benn), 491 F.3d 811, 813 (8th Cir. 2007). Section 522(b)(2) authorizes states to opt out of the federal scheme of property exemptions enumerated in section 522(d). Exercising this grant of authority, North Dakota enacted its own set of property exemptions for bankruptcy purposes, limiting its residents to claiming the state exemptions rather than the federal exemptions. See N.D.C.C. § 28-22-17.

To claim an exemption, a debtor must file a list of the property claimed as exempt. 11 U.S.C. § 522(l); Fed. R. Bankr. P. 4003(a). Once a debtor claims property as exempt,

---

[2] Section 28-22-03, N.D.C.C., provides the homestead exemption. Section 47-18-01, N.D.C.C., defines the available homestead exemption, which is limited to $100,000 in value over and above liens or encumbrances.

4

any party in interest may object to the claimed exemption. Fed. R. Bankr. P. 4003(b). The objecting party has the burden of proving that the exemption is not properly claimed. Fed. R. Bankr. P. 4003(c). Exemption statutes are construed liberally in favor of the debtor. Kaelin v. Bassett (In re Kaelin), 308 F.3d 885, 889 (8th Cir. 2002); Wallerstedt v. Sosne (In re Wallerstedt), 930 F.2d 630, 631 (8th Cir. 1991). Absent a timely objection, property claimed as exempt by the debtor is exempt. 11 U.S.C. § 522(l).

Debtors may amend their exemptions at any time before the case is closed. Fed. R. Bankr. P. 1009(a). The right to freely amend exemptions is not absolute, however, and "can be tempered by the actions of the debtor or the consequences to the creditors." In re Kaelin, 308 F.3d at 889; Bauer v. Iannacone (In re Bauer), 298 B.R. 353, 356 (B.A.P. 8th Cir. 2003). The Court has the discretion to deny the amendment of exemptions if the amendment is proposed in bad faith or would prejudice creditors. In re Kaelin, 308 F.3d 885, 888 (8th Cir. 2002) (citing In re Michael, 163 F.3d 526, 529 (9th Cir. 1998)). The objecting party has the burden of establishing bad faith or prejudice to creditors by a preponderance of the evidence. See In re Bauer, 298 B.R. 353, 356 (8th Cir. B.A.P. 2003) (citing Fed. R. Bankr. P. 4003(c); Grogan v. Garner, 498 U.S. 279 (1991)).

Bad faith is determined by an examination of the totality of the circumstances. Barrows v. Christians (In re Barrows), 408 B.R. 239, 243 (B.A.P. 8th Cir. 2009) (citing In re Kaelin, 308 F.3d at 889; In re Bauer, 298 B.R. at 356). A debtor's attempt to conceal an asset during the bankruptcy process supports a finding of bad faith. In re Kaelin, 308 F.3d at 890; see In re Rolland, 317 B.R. 402, 415 (Bankr. C.D. Cal. 2004) (stating that concealment of assets is the usual ground for a finding of bad faith). The amendment of

5

an exemption may be denied if debtors intentionally undervalue their home in bad faith. In re Bauer, 298 B.R. at 357.

The Trustee argued that bad faith is demonstrated in this case by Debtor's attempt to benefit from his false oath regarding the house's value and his attempted concealment of the actual value of his house at the expense of the creditors of the estate. In support of this claim, the Trustee asked the Court to consider all the evidence received at trial as well as exhibits he offered at the hearing on his objection to Debtor's amended claim of exemptions. The Court received the evidence the Trustee offered.

In response, Debtor argued that to deny Debtor his exemption amendment based on bad faith, the Court must find (1) concealment of the asset and not just concealment of the *value* of the asset; (2) more than a difference of opinion as to value; (3) profit resulting from the undervaluation; and (4) evidence that Debtor took his original exemption in bad faith.

### A. Concealment of an Asset

Debtor suggested that a finding of bad faith amendment of an exemption must include concealment of the asset and not just the concealment of the value of the asset. Specifically, Debtor asserted that he is "not seeking to exempt property he did not list in his schedules," he "properly listed the homestead in his Schedule A" and the "Trustee has always known of the existence of the Debtor's homestead."

Debtor's assertion that he properly listed the house in his schedules and his suggestion that the $225,000 value was appropriate flies in the face of this Court's findings

6

in the adversary proceeding. Debtor did not properly list his homestead in his Schedule A, and his failure to do so was one of the bases for the denial of his bankruptcy discharge.

Further, Debtor offers no authority for the proposition that intentionally undervaluing an asset disclosed on his schedules is not sufficient to justify a denial of an exemption in that asset based on bad faith. There is authority to the contrary, however. See, e.g., In re Bauer, 298 B.R. at 357 (affirming the bankruptcy court's decision to disallow debtors' attempt to amend their schedules to increase their homestead exemption because debtors intentionally undervalued their homestead).

Like the debtors in In re Bauer, Debtor failed to disclose the accurate value of his real property. He filed schedules under oath stating the value of his house was $225,000 and overstating the debt against the house, and the Court concluded that Debtor listed the value with reckless disregard for the truth. Debtor insists that evidence the Court found sufficient to deny Debtor a discharge is not sufficient to show that Debtor seeks to amend his exemptions in bad faith. While the two issues require a separate legal analysis, some of the same facts that resulted in a denial of Debtor's bankruptcy discharge – fraudulently concealing the value of his house and making a false oath as to it – are evidence of bad faith sufficient to reject his attempt to amend his exemptions to claim an exemption in the equity in this house. See Crawforth v. Bachman (In re Bachman), 2007 WL 4355620, at *25 (Bankr. D. Idaho Dec. 10, 2007) (concluding that evidence of a debtor's concealment of her interest in a personal injury claim and settlement proceeds which resulted in a denial of discharge under section 727(a)(2) and (4) constituted sufficient evidence to deny her amended exemption in the personal injury proceeds); see also Seaver v. Markey (In re Markey), 378 B.R. 594, 617 (Bankr. D. Minn. 2007) (finding that the trustee established

7

debtor's bad faith in amending her exemptions through the same facts that proved her fraudulent intent and resulted in the revocation of her discharge under section 727(d)(2)).[3]

As noted above, bad faith is determined by examining all the circumstances and evidence received in this case. Therefore, the Court considered evidence that Debtor undervalued his homestead and overstated the debt against it; it considered the fact that Debtor included his house on his original schedules and took a $1.00 exemption in it on the date he filed; it considered that fact that the Trustee was aware of the homestead and Debtor's claimed exemption; and it considered other evidence as well. Based on its review of the evidence offered at trial and during the hearing, the Court finds that Debtor's efforts to conceal the real value of his home is also evidence of bad faith in claiming the $1.00 exemption and later amending it. The sum Debtor exempted is naturally dependent on the value of the house along with the debt against it. Because Debtor intentionally concealed both, the exemption is likewise tainted. Debtor's argument that there can be no

---

[3] In its opinion finding that the debtor harbored bad faith in her action and inaction regarding her exemptions, the court in In re Markey observed:

> A debtor's persisting failure to amend schedules to correctly reflect the values of an asset and its associate exemption can constitute [the sort of concealment that equates to hiding an asset], at least where the debtor has knowledge of a value substantially greater than that scheduled and certainly where the debtor exploits that enhanced value[.]

Seaver v. Markey (In re Markey), 378 B.R. 594, 617 (Bankr. D. Minn. 2007) (citing In re Bauer, 298 B.R. at 357). Debtor has persistently failed to amend his schedules to reflect the correct value of his house, despite his duty to do so. See In re Bauer, 298 B.R. at 357 (stating that a debtor's duty of disclosure requires updating schedules as soon as reasonably practical after he or she becomes aware of any inaccuracies or omissions). Debtor's refusal to amend was considered during the trial of the adversary proceeding, and the Court considered it in its analysis of amended exemption as well.

8

finding of bad faith because he disclosed the existence of his homestead while concealing the true value of the house and the debt against it is rejected. The Court finds that the Trustee met his burden of showing bad faith.

### B.   More than a Difference of Opinion

Debtor argued that a finding of bad faith requires more than a difference of opinion as to value. During the trial in the adversary proceeding, however, Debtor admitted that $225,000 did not reflect *his* opinion of the value of the house. This admission, together with other evidence received at trial, was considered by the Court when it found that the value of the house was between $249,900 and $265,000 and concluded that the value Debtor listed on Schedule A was false and Debtor listed this value with reckless disregard for the truth. Debtor's suggestion that a finding of bad faith would be based on a mere difference of opinion between Debtor and Trustee regarding the value of the homestead is spurious.

### C.   Debtor Must Profit

Debtor next argued that he did not stand to gain anything by valuing the house at $225,000. This is essentially a rehashing of Debtor's argument in the adversary proceeding that the false value on Schedule A and the concealment of the house's true value was immaterial because it did not result in any profit to him.

The debtor in Hannigan v. White (In re Hannigan), 409 F.3d 480, 483 (5th Cir. 2005) made a similar argument which the Fifth Circuit Court of Appeals rejected. The Fifth Circuit noted that a "bankruptcy court is entitled to insist upon filings and representations made in utmost good faith." In re Hannigan, 409 F.3d at 483. Any argument that there was no

9

harm in undervaluing his home is not persuasive because whether an undervaluation results in savings or profit for Debtor is not the point. The issue is whether Debtor made full disclosure in "utmost good faith." See In re Hannigan, 409 F.3d at 483; In re Bauer, 298 B.R. at 357. The efficiency of the bankruptcy process depends on the accuracy and reliability of the petition, schedules, and statements without the necessity of digging around or conducting independent examinations to get the true facts. In re Barrows, 408 B.R. at 243 (citing Mertz v. Rott, 955 F.2d 596, 598 (8th Cir. 1992)). Accordingly, a debtor who intentionally misrepresents the value of his assets may be denied the opportunity to amend his schedules even if he realized no profit from the concealment or undervaluation. See In re Hannigan, 409 F.3d at 483; In re Bauer, 298 B.R. at 357.

The Eighth Circuit Bankruptcy Appellate Panel noted the irony in In re Bauer – "if the Debtors had accurately disclosed the true value of their home from the outset, they may have been entitled to exempt their equity in it." Id. Instead, the bad faith undervaluation "cost the Debtors the equity in their home." Id. The same is true in this case.

### D.     Original Exemption Taken in Bad Faith

Debtor argued there is no basis for a finding of bad faith because his original exemption was made in good faith. Debtor asserted that even if the house is worth $265,000, his originally-claimed $1.00 exemption was appropriate because there was no equity in the house after deducting the debt against it and the costs of sale. He represented that he only amended the exemption to avoid a fight over it with the Trustee.

Debtor is correct that evidence that he claimed his original homestead exemption in good faith would be a circumstance weighing in his favor. Debtor offered no evidence,

10

however, that his original exemption was taken in good faith. Instead, the only evidence regarding Debtor's intent is that which was elicited at trial in the adversary proceeding. There, the Court determined that Debtor made a false oath as to the value of his house and the debt against it and that he concealed the value of his house. His originally-claimed $1.00 exemption was consistent with this concealment. The undervalued house together with the overvalued debt appeared to leave no equity to exempt. When considering the actual value of his house, the actual debt against it and the lack of authority for deducting costs of sale,[4] the appropriate exemption would have been between $1,500 and $16,600. Claiming an exemption of "up to $100,000" or a sum between $1,500 and $16,600 in his original schedules would have undermined his concealment by informing creditors and the Trustee of the true value of his interest. Debtor's original exemption of $1.00 was, at the very least, consistent with a scheme to conceal the true value of the homestead and

---

[4] Debtor does not cite, nor can the Court find, any authority for the proposition that the costs of sale may not be deducted from the value of the property in determining the amount of an exemption. The North Dakota statute defining the homestead provides in relevant part:

> The homestead of any individual, whether married or unmarried, residing in this state consists of the land upon which the claimant resides, and the dwelling house on that land in which the homestead claimant resides, with all its appurtenances, and all other improvements on the land, the total **not to exceed one hundred thousand dollars in value, over and above liens or encumbrances or both**.

N.D.C.C. § 47-18-01 (emphasis added). If the Legislature intended the value of the homestead to be $100,000 over and above liens, encumbrances and the costs of any hypothetical sale, it would have said so. See Little v. Tracy, 497 N.W.2d 700, 705 (N.D. 1993) (quoting City of Dickinson v. Thress, 290 N.W. 653, 657 (N.D. 1940): "'It must be presumed that the Legislature intended all that it said, and that it said all that it intended to say.'") It did not, and Debtor's suggestion that the costs of sale may be considered in determining the amount of the exemption is not persuasive.

11

arguably a perpetuation of it. This finding, which Debtor offered no evidence to rebut, is consistent with the Court's findings and conclusions in the adversary proceedings and supports its conclusion that Debtor's claim of exemptions and amendment to it were made it bad faith.

### III. Conclusion

Based on the totality of circumstances surrounding Debtor's amendment to Schedule C on September 28, 2012, the Court finds that the Trustee met his burden of showing that Debtor's amendment claiming an increased homestead exemption of up to $100,000 under N.D.C.C § 28-22-03 was made in bad faith. The Trustee's objection to Debtor's amended Schedule C is SUSTAINED. Debtor's amendment of Schedule C to increase his homestead exemption is DISALLOWED.

The Court has considered all other arguments and deems them to be without merit.

**SO ORDERED.**

Dated this February 5, 2013.

*Shon Hastings*

**SHON HASTINGS, JUDGE**
**UNITED STATES BANKRUPTCY COURT**